(June 22, 1894.)

## ERWIN v. HUBBARD, Assessor.

[37 Pac. 274.]

TAXATION—SECTION 1429 OF THE REVISED STATUTES CONSTRUED—STATEMENT UNDER OATH BY TAXPAYER.—It is the duty of the taxpayer to furnish the assessor, on demand, the statement on oath required by section 1429 of the Revised Statutes of 1887, and if he neglects or fails to do so, it is the duty of the assessor to assess such taxpayer's property within his jurisdiction, and in that case the taxpayer cannot recover taxes paid under protest on property so assessed.

REFUSAL TO FURNISH LIST OF PROPERTY—PENALTY—DOUBLE TAXATION.—Although property was assessed in the county of A. in 1889, the assessment of the same property in the county of W. in the same year was not double taxation, but a penalty imposed by law for refusal to furnish the statement required by said section 1429.

(Syllabus by the court.)

APPEAL from District Court, Washington County.

George H. Stewart and R. Z. Johnson, for Appellant.

The duty of assessing is a ministerial duty, limited and de-fined by statutes, and the officer making a mistake or exceeding his jurisdiction is a trespasser and personally liable. (Cooley on Taxation, 789, and cases cited in note 4; *Ford v. McGregor,* 20 Nev. 446, 23 Pac. 508; *Mason v. Johnson,* 51 Cal. 612; *San Francisco v. Ford,* 52 Cal. 198; *San Francisco v. Talbot,* 63 Cal. 485.) Since property can be taxed but once for the same year and purpose, we contend that all personal property must have a *situs* for the purpose of taxation, and notwithstanding the fact that the court has found that some of the plaintiff's cattle, or a number of them, had been taken to Washington county for the purpose of grazing and ranging, still we contend that the *situs* of plaintiff's cattle for the purpose of taxation was in Ada county. The court has held that they were legally taxed in Ada county. The *situs* of property upon the range seems to be fixed by the following rules: 1. Where is the home or habitat of the property? 2. Where is the place from which the riders start out upon their rounds to rodeo and brand the stock, and to which they return when through? (*Barnes v. Woodbury,* 17 Nev. 381, 30 Pac. 1068; *Conley v. Chedic,* 7 Nev. 341; *State v. Falkinburge,* 15 N. J. L. 323; *State v. Shaw,* 21 Nev. 222, 29 Pac. 321.) Taxes illegally assessed and paid may always be recovered, if the collector understood from the payer that the taxes are regarded as illegal, and that suit will be instituted to recover them. (*Shoup v. Willis,* 2 Idaho, 120, 6 Pac. 124; *Holmes v. School Dist.,* 34 Kan. 332, 8 Pac. 287; *Parcher v. Marathon Co.,* 52 Wis. 388, 38 Am. Rep. 745, 9 N. W. 23; *Winzer v. City of Burlington,* 68 Iowa, 279, 27 N. W. 241; Cooley on Taxation, 568, 569.) An action will al-ways lie to recover the payment of taxes when the same was made involuntarily and under duress. (1 Parsons on Con-tracts, 395; Cooley on Taxation, 567; *Mowatt v. Wright,* 1 Wend. 355, 19 Am. Dec. 508; *Chase v. Dwinal,* 7 Me. 134, 20 Am. Dec. 352.) If the illegal tax is paid to prevent a seizure and sale of the taxpayer's property, having apparent colorable or formal authority to make such seizure and sale, and the payment is made under protest, the money so paid may be re-covered back. (Cooley on Taxation, 568; Blackwell on Tax

Titles, 4th ed., 187; 2 Dillon on Municipal Corporations, 938; Hilliard on Taxation, 421; Burroughs on Taxation, sec. 108; *Miley v. Palmer,* 14 Ala. 627.)   Money paid involuntarily, or under compulsion, where the compulsion consisted of actual or threatened restraint of person or interference with property, can only be avoided by repayment. (*Brumagim v. Tillinghast,* 18 Cal. 265, 79 Am. Dec. 176; *Elston v. Chicago,* 40 Ill. 514, 89 Am. Dec. 361; *Mays v. Cincinnati,* 1 Ohio St. 268; *Corkle v. Maxwell,* 3 Blatchf. 413, Fed. Cas. No. 3231; *Radich v. Hutchins,* 95 U. S. 210; *Wolf v. Marshall,* 52 Mo. 167; *Ladd v. Southern Press Co.,* 53 Tex. 172.)   The board of equalization had no power to strike out or reduce the plaintiff's assessment. (Rev. Stats., secs. 1475, 1477, 1483; *People v. Ashbury,* 44 Cal. 613; 46 Cal. 523; *People v. Supervisors,* 50 Cal. 282; *Wilson v. Supervisors,* 47 Cal. 91; *People v. Whylar,* 41 Cal. 351.)

T. Calvin Hyde, George Ainslie, and S. L. Tipton, for Respondent.

The action of the assessor in such cases, being of a judicial nature, the assessment-roll, when made up and completed by him and turned over to the auditor or board of commissioners, becomes or partakes of the nature of a judgment, and it cannot be attacked or set aside in a collateral proceeding, but must be attacked directly. (*Weatherford v. Town of Guilford,* 62 Vt. 327, 19 Atl. 717; *Meade v. Haines,* 81 Mich. 261, 45 N. W. 836.)   It is the duty of the taxpayer to furnish a true and correct list of his taxables to the assessor, and if he fails to do so, and any loss should result to him in consequence of such failure, his complaints on such score should meet with no favor in a court of justice. (*San Francisco v. Flood,* 64 Cal. 504, 2 Pac. 264, 1 West Coast Rep. 567-570; *Bode v. Holtz,* 65 Cal. 106, 3 Pac. 495, 2 West Coast Rep. 366, 367.)   The case of *Swift v. City of Poughkeepsie,* 37 N. Y. 511, was an action to recover money had and received under an alleged illegal levy and collection of a tax.   Held, that the proper remedy was by *certiorari,* since affirmed in *People v. Brooklyn,* 39 N. Y. 81; *People v. Albany,* 40 N. Y. 165; *Gibbs v. Commonwealth,* 19

Pick. 298; *Wright v. City of Boston,* 9 Cush. 241; *Osborn v. Danvers,* 6 Cush. 99; *Boston Water Power v. City of Boston,* 9 Met. 203; *Preston v. Boston,* 12 Pick. 11; *Howe v. City of Boston,* 7 Cush. 274; *Lincoln v. Worcester,* 8 Cush. 55; *Newburyport v. County Commissioners,* 12 Met. 211. To authorize the taxing of personal property in any other county than that in which the owner resides, it must appear that the property is being, to some extent, kept or maintained in such county, and not there casually, or *in transitu,* or temporarily, in the ordinary course of business or commerce. (*People v. Niles,* 35 Cal. 286, 287, 288; *People v. Home Insurance Co.,* 29 Cal. 533, and following; *People v. Holladay,* 25 Cal. 300.) The legislature of Idaho territory, at its thirteenth session, did pass an act under the provisions of which all kinds of livestock were to be assessed (as contended for by appellant) in the county where the owner has his headquarters and principal corrals for such stock, which act was approved February 5, 1885. (See 13th Sess. Laws, p. 160.) But the provisions of that act were eliminated from the revenue laws of Idaho by the adoption by the legislature of the Revised Statutes of Idaho of 1887, under which latter statute the assessment in controversy herein was made. (Idaho Rev. Stats., secs. 1, 4, 17, 19, pp. 61-63, general provisions; Cooley on Taxation, 2d ed., 264, 266.) Against an illegal tax the owner of personal property has a full and adequate remedy at law, and may not resort to a court of equity and through its instrumentality review and correct the assessment-roll. (*Price v. Kramer,* 4 Colo. 546, 555, and cases cited.) The remedy of appellant was before the board of equalization. (*Harris v. Fremont Co.,* 63 Iowa, 639, 19 N. W. 826; *Wilkinson v. Walters,* 1 Idaho, 564.) And such remedy is exclusive. (*Nugent v. Bates,* 51 Iowa, 77, 33 Am. Rep. 117, 50 N. W. 76; *Macklot v. City of Davenport,* 17 Iowa, 379; Burroughs on Taxation, secs. 102, 103, 107, 142, 173, and cases cited.) One who has handed in no list and is overtaxed cannot pay his tax, and then recover back on showing a mistake in the assessor, a mistake not rendering the tax illegal. (*Lott v. Hubbard,* 44 Ala. 593.)

SULLIVAN, J.—This is an action to recover a certain sum of money paid by the appellant to the defendant, as assessor and tax collector of Washington county, as taxes assessed upon certain cattle belonging to the appellant in the year 1889. The facts found by the trial court, necessary to be stated, are substantially as follows: That plaintiff, who is appellant here, resided in Ada county during the year 1889, and was engaged in the business of stock-raising; that his ranch and headquarters for his said business were in said Ada county; that at least a part of his stock grazed for a portion of the year in Washington county; that at the hour of 12 o'clock M. of the second Monday of April, 1889, the said stock of appellant were in said Ada county, except two hundred and fifty head of cattle, which two hundred and fifty head were at said hour and date in Washington county, where they had been driven by appellant, and were then ranging and grazing; that on the twenty-fourth day of June, 1889, the assessor and *ex-officio* tax collector of Ada county listed and assessed to plaintiff sixty head of horses and fifteen hundred head of stock cattle; that at the time of said assessment all of plaintiff's cattle were in said Washington county, fifty head of which had been there continuously since the spring of 1888, and that said fifty head were not included in said assessment, and that said assessment did not include any of plaintiff's cattle under the age of one year, of which there were about one hundred head; that on the twenty-first day of January, 1890, the plaintiff paid the said taxes assessed against him by the assessor of Ada county on the sixty head of horses and fifteen hundred head of cattle; that prior to said assessment, but subsequent to the second Monday of April, 1889, all of said plaintiff's cattle, including those less than one year old, were driven by him into said Washington county, except the two hundred and fifty head above referred to, for the purpose of having them range and graze there so long as the condition of the natural feed and the weather would permit during said year; that on the thirtieth day of July, 1889, the defendant, as assessor of said Washington county, assessed one thousand head of said cattle to the plaintiff, and on the nineteenth day of December, 1889, seized

one hundred head of said cattle, and proceeded to give notice that he would, on the twenty-eighth day of December, 1889, sell the same, or sufficient thereof to pay the said tax and costs of seizure and sale; that on the twenty-first day of December the plaintiff paid said defendant the sum of $331—the amount of said tax and interest and costs; that said payment was made for the purpose of regaining possession of said cattle, and to prevent the sale thereof. The court found that said payment was made under what it denominates an "alleged protest," which protest was in writing, and is set forth in full in the record. The court further finds that the said assessor of Washington county did demand and request, prior to assessing the one thousand head of cattle above referred to, from the plaintiff, a statement in writing setting forth specifically all of the real and personal property owned by plaintiff, in conformity with the provisions of section 1429 of the Revised Statutes of 1887, and that the plaintiff failed and refused to make such statement; that thereafter, on the thirtieth day of July, 1889, the said assessor did list and assess one thousand head of cattle to plaintiff at eleven dollars per head, and that the taxes thereon amounted to $275; that plaintiff failed and neglected to pay said sum, and that by reason thereof the said assessor seized and took possession of one hundred head of said cattle, and was proceeding to sell the same under the provisions of the statute in such case made and provided, when the appellant paid the taxes and costs under protest. From the foregoing facts the court concluded that two hundred and fifty head of plaintiff's cattle were in Washington county at 12 o'clock M. on the second Monday of April, 1889, and were subject to taxation in said county for that reason, and that because of appellant's failure to make the statement required by section 1429 of the Revised Statutes, he could not legally complain because the assessor, through mistake, assessed him with seven hundred and fifty head of cattle more than were subject to assessment in said county.

The record shows that over one thousand head of appellant's cattle were in Washington county on the day respondent made said assessment. The statute makes plain the duties of the

assessor. It also makes equally plain the duty of the tax-payer, in furnishing the assessor a statement of his property, on oath, on demand. It is the duty of the assessor to list and value all property within his jurisdiction, not exempt from taxation. The assessor and his sureties are liable on his official bond for all taxes on property within his county, which, through his willful failure or neglect, is not assessed. (Rev. Stats. 1887, sec. 1457.) As one means of assisting the assessor in ascertaining the taxable property in a county, section 1429 of the Revised Statutes makes it his duty to exact from each person a statement on oath, setting forth specifically all the real and personal property owned by such person, or in his pos-session or under his control, at 12 o'clock M. on the second Monday of April, in this state, and as to property not in this state at that day and hour, all other property owned by him, or under his control, on the day of assessment. Said section sets forth specifically what the sworn statement must contain, and one of the several requirements is that it must contain the county in which the property is situated, or in which it is liable to taxation. The assessor, upon receiving a statement of taxable property situated in another county, is required by section 1436 of the Revised Statutes to make a copy of such statement, and transmit the same to the assessor of the proper county. It is the duty of the taxpayer to furnish the assessor, on demand, the statement on oath above referred to; and, if he neglects or refuses to do so, it then becomes the duty of the assessor to note the refusal on the assessment-book, opposite the name of such delinquent, and thereafter he must proceed to make an estimate of the value of the property of such per-son; and section 1433 of the Revised Statutes declares, *inter alia,* that the value so fixed must not be reduced by the board of commissioners.

Under the facts in this case, and the provisions of the stat-ute, the question is, Can the appellant recover? His home ranch was in Ada county, near the Washington county line. His stock ranged during a part of each year in Washington county. Some of his cattle remained in Washington county

during the entire year. The assessor of Washington county demanded a statement on oath of the appellant, in conformity with section 1429, on the seventeenth day of June, 1889, and the appellant neglected to furnish such statement. On or about the thirtieth day of July, 1889, the assessor noted the neglect of appellant to furnish such statement opposite his name on the assessment-book, and estimated the value of appellant's cattle at eleven dollars per head, and the number of said cattle in Washington county at one thousand head. There is no dispute as to the fact that appellant had at least one thousand head of cattle in Washington county on the date of said assessment, and there is no dispute as to their value. The claim of appellant is that at least seven hundred and fifty of said cattle had been assessed in Ada county, and to permit or allow their assessment in Washington county would be double taxation, which is forbidden by the provision of section 1400 of the Revised Statutes of 1887. We cannot assent to that proposition. If a taxpayer's property is assessed in two counties because of his refusal to furnish the statement required by section 1429 of the Revised Statutes, we do not think that "double taxation," within the meaning of the term as used in said section 1400. The sections of the revenue law must be construed together, and so construed, if possible, as to give effect to each section; and, if a taxpayer has stock ranging in several counties, it is his duty to furnish the assessor of each county, on demand, a statement or list of his property. If he fails so to do, it is the duty of the assessor of each county to assess such taxpayer's property that is within his county, and, if the same property is assessed in two different counties, it is not double taxation; for, if a person fails to furnish the required statement on oath to the assessor, he tacitly submits himself to the valuation of the assessor, and by his refusal he waives those exceptions which he might have urged, had he furnished the statement. It was not intended that the taxpayer might refuse to furnish a list of his property, and take his chances on the assessor assessing him with less property than he owned, and afterward, if the assessor assessed him with more than he owned, have all the benefits which he would have

if he had given a true list of his property. The provision contained in section 1433, which states that the value so fixed by the assessor shall not be reduced by the board of commissioners, clearly indicates that the owner shall lose the right to have his property valuation reduced if he neglects or refuses to furnish to the assessor the list required. This is clearly intended, then, as a penalty for such refusal; but if he can neglect to furnish the list, and then procure the reduction by an appeal to the court, then this provision in section 1433 is rendered nugatory, and he may refuse to furnish such list with impunity. It is quite difficult, sometimes, for the assessor to ascertain what property the taxpayer has, unless the list is furnished; and, if the furnishing of such list is not compulsory, much property would unavoidably escape taxation, as, if the valuation or enumeration is too low, no complaint is made, and, if too high, an appeal would be taken to the court. This cannot be the intention. We must believe the intention of the legislature was to provide that if the list was refused no redress could be had in case of overvaluation. In this case, if the appellant had given the statement demanded, this suit would not have been brought; or, at least, if the assessor had assessed appellant with seven hundred and fifty head of cattle which had been assessed in Ada county, the board of commissioners of Washington county, on a proper showing, would have corrected such assessment.

It is further claimed that the appellant, in response to the demand of the assessor for a list, wrote a letter to the assessor, stating therein that all his property had that year been assessed for taxation in Ada county. But the statute requires a statement on oath to be furnished, and a simple statement in a letter is not sufficient.

As to the two hundred and fifty head of cattle which the trial court found were in Washington county at 12 o'clock M. of the second Monday of April, 1889, and for that reason were properly assessed in said county, the question is raised as to the *situs* of personal property for taxation purposes; but, in our view of the case, it is not necessary for us to determine that question. The trial court found that said two hundred

and fifty head of cattle were in Washington county on said last-mentioned day and hour, and were in said county on the day they were assessed by respondent. The appellant refused to furnish the statement or list of his property demanded by the assessor. Thereafter, the assessor assessed him with no greater number of cattle than he owned in Washington county on the date of the assessment. Under the circumstances of this case, appellant cannot recover. The judgment must be affirmed, with costs in favor of respondent, and it is so ordered.

Morgan, J., concurs.

Huston, C. J., did not sit at the hearing, and took no part in the decision of this case.